UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| In re: | Chapter 11 |
|---|---|
| Zoraya Pod, | Case No. 8-15-75159-reg |
| Debtor. | |

MEMORANDUM DECISION

Before the Court is the motion ("Motion") by Zoraya Pod (the "Debtor") to strip off a second mortgage lien on her residence and treat the remaining debt as an unsecured claim in her chapter 13 plan ("Plan") pursuant to 11 U.S.C. §§506(a) and (d) and §1322(b)(2). Junior liens on a debtor's residence may be stripped off and treated as an unsecured claim in a chapter 13 plan if the value of the property on the petition date is less than the amount owed on the first mortgage. TD Bank ("Bank"), the holder of the second mortgage on the Debtor's residence ("Property"), opposes the Motion, arguing the Debtor's appraisal was low. The Debtor has the initial burden of providing a valuation for her property in the Motion, but the ultimate burden of persuasion lies with the Bank. If the Bank can demonstrate that the Property is worth in excess of the outstanding balance of the senior mortgage, then its lien is partially secured and as a matter of law may not be stripped. The Bank's appraiser valued the Property at $460,000, approximately $110,000 higher than the Debtor's appraiser. The appraisers for the Bank and the Debtor utilized the comparable sales approach in reaching their conclusions as to the value of the property. However, they used different comparable properties which at least in part accounts for the significant difference in value assigned to the Property.

The issue before the Court is whether the Bank has met its burden and proven by a preponderance of the evidence that the value of the Property is at least one dollar more than the amount owed on the senior mortgage.  For the reasons set forth herein, the Court concludes that the Property is worth in excess of $352,635, the value of the senior mortgage.  As a result, there is at least one dollar of equity over the amount owed on the first mortgage.  Therefore the Bank's mortgage lien is not wholly unsecured, and cannot be stripped off.  Because the Bank has met its burden of proof, the Motion is denied.

PROCEDURAL HISTORY

The Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code on November 29, 2015 ("Petition Date").  On January 11, 2016 the Bank filed a proof of claim in the amount of $206,992.58.  On January 12, 2016 the Debtor filed the Motion.  The Bank filed opposition to the Motion on February 26, 2016.  A hearing on the Motion was held on April 13, 2016 which established the necessity for an evidentiary hearing.  The evidentiary hearing was held on July 19, 2016.  The Debtor's appraiser and the Bank's appraiser testified.  At the conclusion of the hearing the matter was marked submitted.

FACTS

The Debtor owns and resides at the Property located in Oceanside, New York.  The Property is encumbered by a first mortgage lien which secures an outstanding debt of $352,635 as of the Petition Date.  The Bank holds a second mortgage lien on the Property with a balance of $206,992.58 as of the Petition Date.  The Debtor values the Property at $350,000, supported by an appraisal attached to the Motion.[1]  The Debtor argues that based on the amount of outstanding

---

[1] The Debtor originally scheduled and appraised the Property as having a value of $342,000.  In response to the Bank's objection and among other issues, the Debtor submitted an amended appraisal, which is the only appraisal the Court has considered in support of the Debtor's valuation.

senior debt relative to the appraised value of the Property as of the Petition Date the second

mortgage is wholly unsecured, and the lien securing the debt may be stripped pursuant to 11

U.S.C. §§ 506(a) and (d) of the Bankruptcy Code.  Avoiding the second mortgage lien leaves the

Bank with an unsecured claim which should be treated under the Debtor's confirmed Chapter 13

plan in a similar fashion as all the other unsecured claimants.  The Bank opposes the Motion, and

has provided an appraisal reflecting that the value of the Property was $460,000 as of May 26,

2016.  The Debtor is entitled to the relief requested in the Motion only if the Court finds that the

Property is worth $352,635 or less.

## LEGAL STANDARD

A chapter 13 debtor may seek to avoid a mortgage lien on his or her residence if that lien

is determined to be wholly unsecured pursuant to Bankruptcy Code §§ 506(a), 506(d), and

1322(b). *In re Hassan*, 2015 WL 5895481, at *3 (Bankr. E.D.N.Y. Oct. 8, 2015) (citing *Pond v.*

*Farm Specialist Realty* (*In re Pond*), 252 F.3d 122, 126 (2d Cir. 2001)).  Thus, a judicial

determination must be made as to the value of the secured creditor's claim. *Id.*  The starting

point is §506(a), which provides that "a claim is secured only to the extent of the value of the

property on which the lien is fixed." *Id.* (quoting *United States v. Ron Pair Esters., Inc.,* 489

U.S. 235, 239 (1989)).  In a Chapter 13 case, the relevant provisions of the Bankruptcy Code

have been interpreted to protect a secured creditor's mortgage lien if the debtor's residence

retains enough value to even partially secure that creditor's lien. *Id.* at *4 (citing *In re Pond,* 252

F.3d at 126).  Therefore, if a mortgage is partially secured, the lien may not be avoided. *Id.*

This and other courts have found that the initial burden of establishing a secured claim's

value is on the debtor. *In re Hassan*, 2015 WL 5895481, at *4 (citing *In re Lepage*, 2011 WL

1884034, at *4 (Bankr. E.D.N.Y May 18, 2011) (other citations omitted)).  The debtor must

- 3 -

prove that "there is not even one dollar of value" in the property to support the lien which the debtor seeks to avoid. *Id.* The debtor typically meets its initial burden by presenting an appraisal to support the valuation of its property.

However, the secured creditor has the ultimate burden to demonstrate by a preponderance of the evidence both the extent of its lien and the value of the collateral securing its claim. *In re Heritage Highgate, Inc.,* 679 F.3d 132, 140 (3rd Cir. 2012) (citing *In re Robertson,* 135 B.R. 350 (Bankr. E.D.Ark. 1992)). Thus, it is up to the secured creditor to overcome the valuation proposed by the debtor. *Id.* Once a party opposes the debtor's valuation, the Court considers the entire record to determine whether the debtor's valuation has been overcome. *In re Park Ave. Partners Ltd. P'ship,* 95 B.R. 605, 610 (Bankr.E.D.Wisc.1988). A court should carefully compare the logic of the analysis and the persuasiveness of the reasoning in each appraisal. *Id.*

Courts have regularly held that valuation of assets is "not an exact science.*" In re Karakas,* No. 06–32961, No. 06–80245, 2007 WL 1307906 at *6 (Bankr. N.D.N.Y. May 3, 2007); *Boyce v. Soundview Tech. Grp*., 464 F.3d 376, 387 (2d Cir.2006). Courts are not bound by appraisals presented in determining the value of property, and the Court may form its own opinion after giving the appraisals and the appraisers' testimony consideration. *Wright v. Chase* (*In re Wright*), 460 B.R. 581, 584 (Bankr.E.D.N.Y.2011) (citing *In re Patterson,* 375 B.R. 135, 144 (Bankr.E.D.Pa.2007) (other citations omitted)). "The Court may look to the accuracy, credibility and methodology employed by the appraisers" to determine the proper valuation of property. *In re LePage,* 2011 WL 1884034, at *4 (citing *In re YL 87th Holdings I LLC,* 423 B.R. 421, 428–35 (Bankr. N.D.N.Y.2010), and *In re Carmania Corp. N.V*., 156 B.R. 119, 121 (Bankr. S.D.N.Y.1993)).

DISCUSSION

The Debtor retained an expert to value the Property. Steven Horn, a certified R.E. General Appraiser in the state of New York, conducted the Debtor's appraisal is support of the Motion. The Debtor's appraisal listed seven comparables with adjusted sales prices ranging between $333,500 and $393,500. (Debtor exhibit 4). Five of the seven comparables were sales and two were listings. (Debtor exhibit 4). The Bank also retained an expert to value the Property. Richard Greco, also a certified R.E. General Appraiser in the state of New York, conducted the Bank's appraisal in opposition to the Motion. The Bank's appraisal listed three comparables with adjusted sales prices ranging between $429,150 and $504,650. (Bank exhibit C-2). The Court accepts the testimony of both Mr. Greco and Mr. Horn as experts, and finds that each were sufficiently qualified to render an appraisal of the Property.

Both the Bank's appraiser and the Debtor's appraiser used the sales comparison approach to value the Property. The sales comparison approach takes properties that are sold in the general proximity of the subject property, otherwise known as comparables, and compares them with the subject property, monetarily adjusting for differences in order to determine an approximate market value for the subject property. The appraisals submitted by the Bank and the Debtor diverge on a number of points concerning the comparables used for each appraisal; 1) the age, 2) the style or design, and 3) the distance from the Property. Each comparable, and the adjustments made to it, had an impact on the value the appraiser assigned to the Property. The different comparables chosen by each appraiser resulted in a significant difference in the assessed values of the Property.

Age

It is undisputed that the age of the Property is 42 years old.  The Debtor's appraisal used comparables that ranged in age from 51 to 105 years.  (Debtor's exhibit 4).  The Court notes that these comparables are all significantly older than the Property.  In his Addendum and through testimony, the Debtor's appraiser noted that no adjustments were made for the difference in age due to modernization of the comparable properties.  *Id.*  (TR. 24-25).  Rather than taking into account the age of the comparables were, he took into consideration the overall condition of each comparable property.  *Id.*

The Bank's appraiser on the other hand, found comparables that were closer in age to the Property.  (Bank exhibit C-2).  The ages of the comparables used in the Bank's appraisal were between 40 and 50 years old.  *Id.*  The Bank's appraiser testified that he would have adjusted for the ages of the comparables, accounting for a depreciation factor, if he had used comparables that were significantly different in age.  (TR. 69).  Further, the Bank's appraiser testified that the Debtor's appraisal did not sufficiently justify the lack of adjustment for the age, even if the comparables were indeed of the same condition.  (TR. 110-111).

Style

It is undisputed that the design of the Property is what is commonly referred to as a hi-ranch.  The Debtor's appraisal used various different styles of comparables, including one hi-ranch, four colonials, and two capes.  (Dr. exhibit 4).  In the Addendum and through testimony, the Debtor's appraiser explained that different styles were used as comparables because "the local market does not differentiate between ranch, split, contemporary, hi-ranch, […] or any other style dwelling, […and] are all equally marketable in the area."  *Id.*  Therefore, the Debtor's appraiser concluded that differences in style did not affect the value of the properties.  (TR. 51).  In fact, he opined that it was inappropriate to use the same style of home in an appraisal because

it would narrow the scope to a very small niche of buyers.  (TR. 32).  All of the Debtor's non hi-ranch comparables were valued in excess of \$350,000, and the single hi-ranch comparable was valued at \$333,500.  *Id.*

The Bank's appraisal used three hi-ranch comparables within a one-mile radius of the Property.  (Bank exhibit C-2.)  The Bank's appraiser testified that he would have adjusted the value for the difference in style, if he could not find any comparables of the same style. (TR. 114, and 100).  The Bank's appraiser testified that there is a different market reaction to colonials than hi-ranches, so when the property to be appraised is a hi-ranch, he compares hi-ranches. (TR. 64).

Distance

All of the comparables that the Debtor's appraiser used were within approximately 1/3 mile of the Property.  (Debtor exhibit 4).  The Debtor's appraiser testified that proximity was important in assessing the value of a property.  (TR. 23-24).  This is especially true in Nassau County, because everything is close and therefore it is optimal to keep the comparables within a short distance of the Property.  *Id.*

The Bank's comparables were all approximately 0.7 miles away from the Property. (Bank exhibit C-2).  The Bank's appraiser testified that these were the closest houses within the parameters that were equivalent to the Property.  (TR. 63).   Despite the fact that the Debtor's comparables were closer to the Property, the comparables that the Bank used were in the same school district, in the same town and provided access to the same amenities associated with Oceanside.  *Id.*  But because of this distance, the Debtor's appraiser found that the Bank's analysis risked being artificially high and inaccurate.  (TR. 31).

The Debtor appraiser's Addendum suggests preference was given to those comparables that were most similar to the Property with respect to location, appeal, condition and amenities. (Debtor exhibit 4).  However, the Debtor's appraisal reflected a high priority given to the proximity of the comparables to the Property, and did not adjust for the difference in age, or style of the comparables.  The Bank's appraiser testified that he "would never use a comparable sale that's outside the parameters of the Property when, in fact, there are comparable sales that are available in the subject neighborhood" as there are in Oceanside in this case.  (TR. 64).

ANALYSIS

This Court has written on valuation for the purposes of stripping a secondary mortgage lien twice before.  In each case, the Court found that the debtor had met his initial burden in establishing the valuation of his property, and that the creditor failed to overcome the debtor's valuation.  *See In re LePage,* 2011 WL 1884034 and *In re Hassan*, 2015 WL 5895481.  In this case however, the Court finds the Bank has proven by a preponderance of the evidence that the property is worth more than $352,635.  It has presented sufficient evidence to overcome the Debtor's valuation.

The difference between the two valuations is significant in this case, which casts doubt upon the reliability of the Debtor's valuation.  Courts have recognized that where there is a significant difference in value between a debtor's appraisal of a property and the secured creditor's appraisal of a property, the accuracy of the debtor's appraisal is called into question. *See In re Robinson,* 2015 WL 5309513, (Bankr. D.N.H. Sept. 10, 2015) (the bank showed a $100,700 difference in value and the court found the debtors did not meet their burden because the debtors' margin of error was "simply too big a hurdle for the debtors to overcome"); and *In*

- 8 -

*re Hernandez,* 493 B.R. 46, 51 (Bankr. N.D. Ill 2013) (noting the "sharply different" conclusions on valuation, concluding that the debtors did not meet their burden of proof).

The Debtor's use of comparables of a different style and age than the Property also casts doubt on the reliability of the Debtor's valuation. Appraisals that use comparable properties that are so dissimilar to the subject property have been recognized as unreliable. *In re Hernandez,* 493 at 54 (finding the debtors' appraisal unreliable in part because it did not make adjustments for the differences in styles between the comparables and the subject property); *In re Robertson,* 135 B.R. 350 (Bankr.E.D.Ark. 1992) (finding the comparables the debtors used were not similar enough to the subject property). The Debtor's appraisal should have adjusted for the difference in style and age of the comparable properties to that of the Property. Alternatively, as the Bank chose, the Debtor's appraisal could have used similarly styled and aged properties as comparables that were still within a one mile radius of the Property.

There were a number of additional issues with the comparables in Debtor's appraisal, as the Bank highlighted at the evidentiary hearing. The Debtor's appraisal improperly used two listings, a "flip sale," a short sale, and a bank sale. Comparables 6 and 7 were listings, which should not be used in an appraisal because they are not actual sales. (TR. 70). Comparable 4 was a "flip sale" which, according to the Bank's appraiser, is prohibited from being used in an appraisal in order to safeguard against mortgage fraud. (TR. 67-68). Comparable 3 was a bank sale, which is not reflective of an arms-length transaction, nor is it indicative of market value, according to the Bank's appraiser. (TR. 66). Finally, Comparables 2 and 5 were not adjusted for their different styles and ages. (TR. 65 and 69) (Debtor exhibit 4). Had those invalid comprables been excluded, the Debtor's valuation would have been more similar to the Bank's valuation.

The Bank's appraisal, however, is not without its own deficiencies.  Specifically, the effective date of the Bank's appraisal was approximately six months later than the Petition Date. If the Petition Date were used as the effective date, the Bank's Comparable 1 would have been excluded from the appraisal as it was sold after the Petition Date.  (TR. 18-19).  Further, the Debtor cast doubt on the reliability of the Bank's appraiser because the initial appraisal was done as a two family home, when it should have been appraised as a one family home.  The Bank's second appraisal of the Property reflected an increase in the amount of $60,000 and the Court finds that the Bank did not adequately substantiate this increase.  Finally, the Debtor demonstrated that had the Bank used the Petition Date, Debtor's Comparable 1 should have been included, which was approximately the same age, style and closer in proximity to the Property, albeit with a much lower sale price.  (TR. 91).  Conceivably, use of this property would have decreased the Bank's valuation.

However, the infirmities presented in the Bank's appraisal do not account for the difference of over $110,000 between the two valuations, and the Court finds that the Bank's appraisal has fewer deficiencies overall.  Although no appraisal is perfect, courts have recognized that more deficiencies in one appraisal adversely affect its reliability when compared to another appraisal also shown to have deficiencies.  *See In re Robertson,* 135 B.R. at 353 (finding issues with both the bank and debtor's appraisals, but concluding that the debtor's appraisal contained more infirmities, and thus agreeing with the bank's valuation.).  In sum, the Court finds that after viewing the testimony of the appraisers and reviewing the appraisals, the Bank provided more persuasive evidence that the Property was worth significantly more than $352,635 as of the Petition Date.  Therefore, there is sufficient equity to which the Bank's mortgage lien can attach and it remains a secured claim.

The Court concludes that because there is equity remaining in the Property, after taking

into account the amount owed on the first mortgage, the Motion is denied.[2]  In a chapter 13 case

where the debtor fails to establish that the creditor is wholly unsecured, the antimodification

exception applies under §506(a).  *In re Pond,* 252 F.3d at 125.  This means that creditor is treated

as a secured claimant to the extent of its claim for purposes of treatment in the debtor's plan.  *Id.*

The Supreme Court in *Nobleman v. American Savings Bank,* 508 U.S. 324 (1993) made this

clear:

> The portion of the bank's claim that exceeds [the established value of the property in
> question] is an 'unsecured claim component' under §506(a); however, that determination
> does not necessarily mean that the rights the bank enjoys as a mortgagee, which are
> protected by §1322(b)(2), are limited by the valuation of its secured claim.

*Nobelman,* 508 U.S. at 329 (internal citations omitted).  Thus, in chapter 13, once it is

---

[2] The Court notes that some courts calculate an exact valuation at this stage in the analysis.  *See In re Robinson,* 2015 WL 5309513 at *10 (making a "hybrid" comparable to determine the value of the property); and *In re Hernandez,* 493 B.R. at 54 (setting the value of the property at the secured creditor's valuation).  This Court concludes it is sufficient to find that the value of the Property exceeds the value of the first mortgage for purposes of the Motion.

established under §506(a) that there is value in the collateral to secure a claim, the actual value of

the collateral need not be determined because the secured creditor's entire claim may not be

modified. *In re Pond,* 252 F.3d at 125. Here, since the Court has determined that there is value

in excess of the balance on the first mortgage, rendering the second mortgage secured, the Bank

retains its secured claim in the amount of $206,992.58.

CONCLUSION

For the reasons set forth above, the Motion is denied. The Court shall enter an Order

consistent with this Memorandum Decision forthwith.



**Dated: Central Islip, New York**
      **October 25, 2016**

                  **Robert E. Grossman**
               **United States Bankruptcy Judge**